591 F.2d 605
 Linda (Sinklear) LESSMAN, Plaintiff-Appellant,
v.
Bill McCORMICK, Fred Howard, Ed Ritchie, Ed White, John
Finden, James Foster, John Hopkins, Elmer Beck, Dr. John
Davis, Jr., Robert Drumm, Ralph Glenn, Joan Guy, B. M. Kane,
William Kobach, J. R. Kreiger, Kenneth Payne, Jr., Robert
Petro, Darrell Roach, Richard Roach, G. W. Snyder, Jr., Russ
Reynolds, and Topeka Bank & Trust Company, Defendants-Appellees.
 Nos. 77-1951 and 77-2045.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted Nov. 14, 1978.
Decided Jan. 26, 1979.
 
 Fred W. Phelps, Jr. of Fred W. Phelps, Chartered, Topeka, Kan., for plaintiff-appellant.
 Leonard M. Robinson, Topeka, Kan., for defendant-appellee Bill McCormick.
 Wilburn Dillon, Jr., Topeka, Kan. (Tom L. Green, Topeka, Kan., with him on brief), for defendants-appellees Fred Howard, Ed Ritchie and Ed White.
 L. M. Cornish, Jr., Topeka, Kan. (Henry J. Schulteis, Topeka, Kan., with him on brief), of Glenn, Cornish & Leuenberger, Chartered, Topeka, Kan., for defendants-appellees John Finden, James Foster, John Hopkins, Elmer Beck, Dr. John Davis, Jr., Robert Drumm, Ralph Glenn, Joan Guy, B. M. Kane, William Kobach, J. R. Kreiger, Kenneth Payne, Jr., Robert Petro, Darrell Roach, Richard Roach, G. W. Snyder, Jr., Russ Reynolds, and Topeka Bank & Trust Co.
 Before McWILLIAMS, DOYLE and LOGAN, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 These appeals arise out of a Civil Rights Act complaint filed by Linda (Sinklear) Lessman against the Topeka Bank & Trust Company and individual defendant appellees who include the Mayor of the City of Topeka, a Topeka policeman Ed White and his supervisors, including the Chief of Police, Russ Reynolds, an employee of the bank, and all of the members of the board of directors of Topeka Bank & Trust Company. Jurisdiction is asserted under 42 U.S.C. §§ 1983, 1985(2), (3), 1986 and 28 U.S.C. § 1343(3). The trial court dismissed the complaint upon motion of the defendants. Ms. Lessman has appealed.
 
 
 2
 One question on appeal is whether the complaint states a cause of action under 42 U.S.C. § 1983, specifically whether the actions recited, if true, show a deprivation of a right protected by the Constitution and the laws of the United States within the meaning of that section. Also at issue is whether the complaint is sufficient to state a cause of action under 42 U.S.C. §§ 1985(2) or (3) or 1986, specifically whether she has brought herself within a protected class.
 
 
 3
 The complaint alleged a conspiracy among all defendants to deny plaintiff equal protection of the law and to injure her property and person. It asserted that the defendants arranged to have White, a city police officer, arrest plaintiff upon a warrant and complaint alleging that she had failed to pay an overtime parking ticket. It was further alleged that White arrested and imprisoned the plaintiff, took her to the police station, where she paid the fine for overtime parking (which she admitted she owed); that having paid the fine plaintiff's imprisonment was continued by informing her that she must see the defendant Reynolds, the bank employee; that White ordered plaintiff to wait in a room until Reynolds appeared, who told plaintiff that when she failed to respond to his letters to her as a debtor of the bank he had prevailed upon the city's police power to arrest and imprison her.
 
 
 4
 The reasons for the conspiracy were stated to be to instill in plaintiff a fear of the awesome powers of "those who effect arrests and imprisonments" by subjecting her to humiliation, embarrassment and the like, and to instill in her a fear of those who have the power to cause others to effect arrests and imprisonment. The reason for the wish to instill such fear was declared to be to force the plaintiff to give the bank a preferred position in relation to plaintiff's other creditors who did not have access to such compelling means of exacting payments.
 
 
 5
 No specific facts were alleged with respect to any defendants other than White and Reynolds, except that they "arranged to have the defendant, White, arrest plaintiff," and that they conspired to deprive plaintiff of her rights.
 
 
 6
 Ruling upon motions by the defendants to dismiss, the trial court declared that there was a bare conclusory allegation of conspiracy, with no specification, insufficient to withstand a motion to dismiss as to the Section 1985 claim. It said that any cause under the portion of § 1985(2) following the semicolon, and § 1985(3) requires a colorable claim of class-based discriminatory animus which is not pleaded here, "nor does it appear they can fairly be so pleaded given the facts which underlie this suit." Since a cause under § 1986 depends upon statement of valid cause of action under § 1985, that claim also was ruled out.
 
 
 7
 With respect to the § 1983 claim it found the conclusory statements insufficient to state a cause against any other than defendants White and Reynolds. As to them, there was sufficient state action or action under color of state law, but characterizing the claim as essentially one for false arrest or imprisonment the judge thought the incidents alleged were not of sufficient importance to support federal jurisdiction. Therefore, the complaint was dismissed as to all defendants.
 
 
 8
 Upon review we must bear in mind first that this was not a ruling upon a motion for summary judgment, but one where a complaint was dismissed for failure to state cause of action. The allegations of the complaint must be taken at face value and construed most favorably to the pleader. A motion to dismiss must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).
 
 
 9
 Thus we must carefully analyze the complaint against the backdrop of each of the sections under which jurisdiction was invoked, to see if it can pass the required tests under the liberal construction rules we are bound to apply.
 
 
 10
 * We consider first the allegations of claims under 42 U.S.C. §§ 1985(2), 1985(3) and 1986. Appellant's brief concedes that only the portion of § 1985(2) following the semicolon is invoked here. With respect to this and § 1985(3) she acknowledges that there must be class-based discriminatory animus. She alleges it is present because she is a member of a class consisting of all debtors, and that the discrimination was to give one creditor an unfair and unjust advantage over her as a debtor.
 
 
 11
 Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), discussing § 1985(3), stated:
 
 
 12
 The language requiring intent to deprive of Equal protection, or Equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by law to all. (Footnotes omitted.)
 
 
 13
 The Supreme Court expressly declined to decide whether a conspiracy motivated other than by racial bias would be actionable under that section. 403 U.S. at 102 n.9, 91 S.Ct. 1790. This circuit has held the same kind of class-based discriminatory animus is required under that portion of § 1985(2) following the semicolon. Smith v. Yellow Freight System, Inc., 536 F.2d 1320 (10th Cir. 1976). We have also ruled that where there is no valid claim under § 1985 none can exist under § 1986. Taylor v. Nichols, 558 F.2d 561, 568 (10th Cir. 1977).
 
 
 14
 The circuit court cases which have recognized under § 1985, classes which are not racially based, have stayed close to the areas protected by the First Amendment. E. g., Means v. Wilson, 522 F.2d 833 (8th Cir. 1975) (Indians with a particular political view); Marlowe v. Fisher Body, 489 F.2d 1057 (6th Cir. 1973) (members of Jewish faith); Cameron v. Brock, 473 F.2d 608 (6th Cir. 1973) (supporters of a political candidate); Richardson v. Miller, 446 F.2d 1247 (3d Cir. 1971) (employees with a certain political view).
 
 
 15
 Debtors have not been recognized as a protected class as yet. Bankrupts have been expressly held not to be such a class in an en banc decision of the Fifth Circuit. McLellan v. Mississippi Power & Light Co., 545 F.2d 919 (1977).
 
 
 16
 Surely if we should recognize debtors as a protected class it would be the largest in America. We do not have to make that decision, however, because the plaintiff is not complaining about a conspiracy against all debtors, only those debtors who owe the Topeka Bank & Trust Company, who have defaulted on their loans, have not responded to ordinary means of pressure, and have committed some violation of law which gives the alleged coconspirator police officers an excuse to arrest them. That surely does not describe a discriminatory animus against all debtors, against a type or class of debtors, or anyone other than this particular individual. The instant case is not essentially different from Ward v. St. Anthony Hosp., 476 F.2d 671 (10th Cir. 1973) where we held a physician denied staff privileges at a hospital had not shown himself the object of a class-based invidiously discriminatory animus. The complaint must allege facts showing a conspiracy against plaintiff "because of" her membership in a class, and that the criteria defining the class "were invidious." Harrison v. Brooks, 519 F.2d 1358, 1360 (1st Cir. 1975).
 
 
 17
 The complaint was properly dismissed as to the 42 U.S.C. §§ 1985(2), (3) and 1986 claims.II
 
 
 18
 We turn to the sufficiency of the allegations of the complaint to state a claim under 42 U.S.C. § 1983. Two elements are necessary for recovery under that section.
 
 
 19
 First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show the defendant acted "under color of law."
 
 
 20
 Adickes v. S. H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). The allegations are sufficient, at least as to policeman White and the bank employee Reynolds, to find action under color of state law. The thrust of § 1983 is to protect against the misuse of power by officials such as the police here. Monroe v. Pape, 365 U.S. 167, 184, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Private individuals and entities are subject to liability under the section. See Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In fact the trial court found there was action under color of state law. The dispute, however, is over whether defendant was deprived of a right secured by the Constitution and laws of the United States within the meaning of § 1983.
 
 
 21
 While plaintiff claims the defendants intended to injure her in her property and in her person, and to force her to prefer the bank over her other creditors, there is no allegation that she was unlawfully deprived of her money or property. She paid a fine on the parking ticket for which she was arrested; but admits it was owed. There is no statement in the complaint that she did in fact prefer the bank over her other creditors because of this action. The complaint does allege that she was arrested and taken to the police station, and after paying her fine she was not released until she talked to the bank officer. Thus her complaint states a claim for false arrest and false imprisonment under color of state law. We are required to consider whether that claim is within the protection of § 1983.
 
 
 22
 Certainly the concept of "liberty" guaranteed by the Fourteenth Amendment denotes freedom from bodily restraint. Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Perhaps, however, not all unlawful deprivations of liberty were intended to be protected under § 1983. In Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), involving defamation, whereby local police publicly identified the plaintiff as a shoplifter, it was held this cause was not within the scope of § 1983. The court noted that the Civil Rights Act was not intended to create a body of general federal tort law, and "the procedural guarantees of the Due Process Clause cannot be the source for such law." 424 U.S. at 701, 96 S.Ct. at 1160.
 
 
 23
 Nevertheless, in numerous instances the courts have held that false arrest and false imprisonment give rise to claims under § 1983. In most of these cases there were aggravated circumstances such as assaults, harassment or unlawful searches. In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), for example, there was an unlawful arrest, harassment, illegal search and holding of the plaintiff for about 10 hours.
 
 
 24
 There have been a number of cases in the Tenth Circuit. Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963) involved an illegal arrest, excessive force, seizure of property, denial of bail and a compelled guilty plea. In Marland v. Heyse, 315 F.2d 312 (10th Cir. 1963), plaintiff was arrested on three separate occasions, held at the police headquarters for five hours on the first, two hours on the second and overnight the third time. The court held that a jury question was presented as to whether the conduct of the police officers "on the different occasions" was so arbitrary, unreasonable and without probable cause as to subject plaintiff to a deprivation of rights under the Constitution. In Martin v. Duffie, 463 F.2d 464 (10th Cir. 1972), a complaint was held to state a cause of action against police officers where there was arrest without a warrant and the police department did not show probable cause. But in that case while being questioned, plaintiff was struck on the head with such severity that he suffered a brain injury which required immediate surgery. Also the arresting officers had made three separate visits to plaintiff's home to search (apparently with plaintiff's consent), none of which were productive.
 
 
 25
 There are, however, cases which apparently involved no violence, unlawful searches or repeated harassment. We found a cause was stated under § 1983 when state officials were alleged to have abused their extradition power by turning over the plaintiff to another state without affording him the hearing required by state statutes. Sanders v. Conine, 506 F.2d 530 (10th Cir. 1974). Also while a defendant's verdict was upheld, the court in Van Camp v. Gray, 440 F.2d 777 (10th Cir. 1971), appears to assume allegations of an unlawful arrest, without violence or complicating facts, stated a case for the jury.
 
 
 26
 Other circuits also have cases recognizing § 1983 jurisdiction where there was little more than an unlawful arrest. See Duriso v. K-Mart No. 4195, 559 F.2d 1274 (5th Cir. 1977); Beightol v. Kunowski, 486 F.2d 293 (3d Cir. 1973); Giordano v. Lee, 434 F.2d 1227 (8th Cir. 1970); Joseph v. Rowlen, 402 F.2d 367 (7th Cir. 1968) (two hours detention); Nesmith v. Alford, 318 F.2d 110 (5th Cir. 1963) (four or five hours detention); Cf. Cohen v. Norris, 300 F.2d 24, 30-31 (9th Cir. 1962).
 
 
 27
 We refused to find a cause of action under § 1983 in a case where a student being ticketed for a traffic violation attempted to drive his car away and refused to sign a ticket. He was taken into custody, handcuffed, transported ten miles to a Justice of the Peace, not allowed to make bond on an American Automobile Association bond card, and kept in a cell for a period in excess of one hour. The court stated that "in the final analysis this incident falls short, not only because the officers acted in accordance with local law requiring that a violator be arrested when he fails to sign the ticket, but also because the case is insubstantial." Wells v. Ward, 470 F.2d 1185, 1189 (10th Cir. 1972).
 
 
 28
 Atkins v. Lanning, 556 F.2d 485 (10th Cir. 1977) involved a case of mistaken identity. Plaintiff was arrested and kept either in jail or a state mental hospital for 33 days before it was established that police had in fact arrested the wrong person. The key question in the case was whether the investigators of a prosecutor were entitled to the prosecutor's immunity. The court held that they were under the circumstances of the case. But in dictum it was stated that a plaintiff must also demonstrate a violation of federal constitutional rights; that while the slightest interference with personal liberty would constitute false imprisonment under state law, it does not follow that all such invasions "however trivial or frivolous" are sufficient to invoke a remedy under the Civil Rights Act. We do not read that dictum to mean that false imprisonment for 33 days would be an insubstantial, trivial or frivolous deprivation of personal liberty.
 
 
 29
 The court below treated the arrest as legal, since there was a valid outstanding warrant against the plaintiff on the overtime parking violation. It viewed the deprivation of liberty as being only for a brief period, i. e., that time after the plaintiff had paid her fine and until the bank officer interrogated her. The court also noted that a state court action had been commenced involving substantially the same allegations. It thought these factors indicated an insubstantial case. We do not take the same view.
 
 
 30
 The complaint does not state how much time elapsed between the payment of the fine and the arrival of the bank officer. If it had been a long period perhaps plaintiff would have so alleged in her complaint. But that does not necessarily follow. Further, we do not consider the fact the arrest was made upon a valid warrant necessarily means that the time of the false imprisonment begins only after the fine was paid. The complaint alleged that the purpose of the arrest was in aid of the bank's debt collection process. It would be relevant to know whether the Topeka police, routinely or even occasionally, go to a person's home to make an arrest upon a violation for overtime parking. If this is never done unless there is a large accumulation of tickets, then although the warrant would be valid, it could still be an abuse of power. In Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), white and black clergymen were arrested and detained for a few hours for attempting to use a segregated rest room at a Mississippi bus station. The court held that the arresting officers would not be liable under § 1983 if they acted in good faith to arrest under a statute they thought was valid. But it said the officers did not defend on that basis, and the petitioners were entitled to show the officers were not acting in such good faith belief in making the arrest. It remanded for a new trial on the § 1983 claim. We read this case as support for the proposition that an arrest which might be lawful on its face can be an abuse of power, condemned by the Civil Rights Act, if done for an improper purpose.
 
 
 31
 We must take the allegations of the complaint in the instant case as true when reviewing the grant of a motion to dismiss. This is not a case where a policeman acted with excessive zeal in a legitimate arrest situation, as in Wells v. Ward, supra, or where there was an honest mistake of identity, as in Atkins v. Lanning, supra. It is a case of an arrest, not to collect on the overtime parking ticket, but to give improper aid to the bank. This may be close to the line of being an insubstantial deprivation of liberty, but without the development of facts we cannot say that it is, at least as to White and Reynolds.
 
 
 32
 All that is alleged against the defendants other than White and Reynolds is that they conspired together and caused the arrest and detention. No specific facts are set out connecting them to the arrest. Even so we think there is sufficient here to pass the applicable liberal construction test. Specific facts are stated with respect to the officer forcing plaintiff to stay at police headquarters until the bank employee arrived. It is reasonable to inquire whether other bank officers or directors knew of and approved this means of intimidation. It is also a reasonable inquiry whether Reynolds contacted only Officer White or whether he may have called someone else in the police hierarchy who relayed the request to the arresting officer.
 
 
 33
 In many cases of conspiracy essential information can only be produced through discovery, and the parties should not be thrown out of court before being given an opportunity through that process to ascertain whether the linkage they think may exist actually does. Considering a somewhat analogous complaint under the Railway Labor Act the Supreme Court said:
 
 
 34
 The respondents also argue that the complaint failed to set forth specific facts to support its general allegations of discrimination and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Following the simple guide of Rule 8(f) that "all pleadings shall be so construed as to do substantial justice," we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. Cf. Maty v. Grasselli Chemical Co., 303 U.S. 197, 58 S.Ct. 507, 82 L.Ed. 745. (Footnotes omitted.)
 
 
 35
 Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). The Supreme Court has indicated the same position should be taken as to § 1983 complaints. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).
 
 
 36
 It seems unlikely to us that any connection can be shown to keep the mayor in this action. The brief indicates the mayor was added because he was the supervisor of the police. The same may be said as to other defendants. The doctrine of Respondeat superior does not apply to these cases. Personal participation will have to be demonstrated to keep them in the case. It may well be that at some stage a motion for summary judgment may be appropriate to let some defendants out. But we hold the complaint is sufficient to withstand a motion to dismiss as to the § 1983 claims.
 
 
 37
 Thus we affirm the grant of the motion to dismiss the complaint as to the counts involving §§ 1985(2), (3), and 1986 as to all defendants, but not with respect to the § 1983 claims. Each party is to bear its own costs of this appeal. The case is remanded for proceedings consistent with this opinion.