Larry TODD, Plaintiff,

v.

WHITE LAKE TOWNSHIP, Randy Lingenfelter, James Christ, Kenneth Peppiatt, Estate of William Gordon, Deceased, Oakland County, Gary Woods, James Bowen and Charles Williams, jointly and severally, Defendants.

Civ. A. No. 81-72625.

United States District Court,
E.D. Michigan, S.D.

Jan. 6, 1983.

---

William H. Goodman, Detroit, Mich., for plaintiff.

Wayne D. Gardner, Detroit, Mich., for defendants White Lake Tp., Randy Lingenfelter, James Christ, Kenneth Peppiatt and Estate of William Gordon.

James W. Heckman and John F. Allen, Troy, Mich., for defendants Oakland County, Gary Woods, James Bowen and Charles Williams.

## OPINION

FEIKENS, Chief Judge.

On March 14, 1978, when he was fifteen years old, plaintiff Larry Todd attempted to "hijack" a school bus in Union Lake. His attempt was foiled by Oakland County and White Lake Township police officers, one of whom shot him in the stomach while apprehending him. Todd's complaint against Oakland County, White Lake Township, and individual police officers from each community is in three counts, alleging a deprivation of his constitutional rights in violation of 42 U.S.C. § 1983; assault and battery; and negligence.

For reasons which follow, I granted defendants' motion to dismiss Count I of the complaint during the jury trial on this matter.[1] Counts II and III were then voluntarily dismissed by plaintiff, in light of my ruling on Count I.

### I.

The relevant facts[2] are as follows: At 1:30 a.m., approximately one month before the attempted hijacking, Todd went to the home of a schoolmate, Dawn Pacetti, with a loaded shotgun. Todd was infatuated with Dawn, and frustrated by what he perceived as her rejection of him. At Dawn's house, Todd threatened to harm both Dawn and himself. Dawn's family called the police, who came and disarmed him forcibly. Among the officers from White Lake Township and Oakland County at the scene was defendant Gary Woods. Woods was the officer who took the weapon from Todd.

As a result of the incident, Todd was taken to Children's Village, a therapeutic environment for troubled youngsters. One week after his arrival, Todd was released on probation. Assault charges against him were dismissed. Todd now contends that the defendants were angered by this disposition of his case.

Shortly after his return home, Todd and two friends, Gregory Nelson and James Huffman, began to plan the March 14 hijack. Their object was to hijack the bus while Dawn and her two sisters were aboard and then compel the driver to take them to Florida. Todd was to bring a gun hidden in a flower box to enforce the scheme. Rumors of the intended hijacking spread at school, and on the afternoon of March 13, Leona Spencer, the bus driver, was notified of the plan (although not of Todd's identity) by a concerned student. Spencer became worried, and called Alice Smith, Dawn's mother. Smith, taking the rumor seriously and strongly suspecting Todd was behind the plan, called the Oakland County police. Dale LaBair, the officer to whom she talked, assured her he would notify the White Lake Township police force and talk with her further.

After a number of hours, Mrs. Smith contacted the White Lake police herself.[3] At about 1:30 a.m., defendants Gordon,[4] Bowen and Smith (all from White Lake

---

1. After plaintiff had presented most of his case, I asked for an offer of proof as to any further evidence he wished to submit, and in ruling I looked at this evidence and the asserted facts in the offer of proof in a light favorable to him; in other words I accepted this evidence and offer of proof as plaintiff claimed it for the purpose of my ruling. When I dismissed Count I, I offered to let Todd's tort and civil rights claims stand against defendant Woods, but Todd chose not to do this.

2. As stated or not contested by Todd, unless specifically indicated.

3. Smith also tried to reach Todd's probation officer from Children's Village, but was unsuccessful.

4. Officer Gordon is now deceased.

Township) finally arrived at Mrs. Smith's house to brief her on the plans they were formulating. Smith, understandably concerned about the safety of her daughters, was told by the officers to allow the girls to board the bus as usual. No harm would come to the girls, the officers said, because Todd's house would be staked out, so as to prevent him from ever getting on the bus. It is the claim of plaintiff, which I accept for the purpose of this ruling, that Officer Gordon stated to Mrs. Smith that "they would blow Larry's head off."

At dawn on the morning of March 14, Officers Gordon, Bowen, and Smith went to a 24-hour restaurant to finalize their plans. They decided that two bus stops would be staked out: Todd's and the Pacetti girls'.[5] During this early morning meeting, Officer Gordon was called away to attend to a plane crash disaster. He was replaced by defendant officers Lingenfelter and Christ. No attempt was made by the police to contact Todd's parents or his probation officer.

Before Spencer left to begin her pickups, she was called by the officers, who asked for her exact route. Although Todd claims Spencer was given no instructions on how to deal with the potential hijacking, he also asserts that the police advised Spencer to use her emergency flashers should anyone actually threaten the bus. I will accept Todd's claims for the purpose of this ruling.

Rather than attempting to board at the usual stop, Todd, Nelson and Huffman flagged Spencer down before either Todd's or Dawn's pickup point. Apparently not recognizing Todd,[6] Spencer allowed him to board, although she did not permit the other boys to do so. According to plan, Todd was carrying a long flower box containing a gun. The gun was not loaded. Spencer drove on and picked up the Pacetti girls. When they were on the bus, Todd brand-

ished the gun, and ordered Spencer to drive to where Nelson and Huffman were walking, so they could be picked up. When Spencer caught up with the boys, they refused to board, until Todd ordered them to at gunpoint. Todd then told Spencer to take them all to Florida. She suggested they stop at the bus depot (a distance of over ten miles) and retrieve her car so that they could take it, rather than the bus. Todd assented. In the meantime, Spencer put on her emergency flashers. Todd did not know that the bus was being followed by the police.

At the bus garage, the bus was met by Officers Woods and Bowen of Oakland County, and Officers Lingenfelter and Christ of White Lake Township. A period of negotiations ensued. Todd allowed Nelson and Huffman to get off the bus, but refused to surrender the girls or Spencer. A "trade" was then suggested; Officer Lingenfelter offered to replace Spencer. After Lingenfelter showed that he was unarmed Todd permitted the exchange. Lingenfelter attempted to convince Todd he should surrender. Todd continued to brandish the gun and threaten the passengers.

When a momentary diversion was created by another policeman, Officer Woods fired two shots at Todd from outside the bus, hitting him in the abdomen with one bullet. Todd was then "quickly taken to [the hospital] for treatment of his wound."

## II.

The heart of Todd's civil rights claim against Officers Christ, Lingenfelter, Gordon,[7] Woods and Bowen is that they could have avoided the harm he suffered as a result of the shooting by alternative conduct in apprehending him, and that their

---

5. Sergeant Williams of Oakland County was advised of but did not help formulate the plan. His counterpart, Sergeant Peppiatt of White Lake Township, was not informed of the plan prior to its execution. According to Todd, Sergeant Williams was under the impression that Sergeant Peppiatt had approved the plan.

6. Mrs. Spencer's testimony at trial was that she did not know Todd's face, and had not intentionally let him board the bus. Todd argued the police had failed to give Spencer a description of him.

7. Gordon was not at the bus depot when the shooting occurred, but did take part in planning the interception.

failure to choose another approach to his arrest was maliciously motivated, or at least negligent. According to Todd, this malicious or negligent choice of an approach to deal with him constituted a violation of his constitutional rights.[8]

I cannot agree. Taking the plaintiff's testimony and offer of proof in the light most favorable to him, as I must on this motion to dismiss, I find that Todd was deprived of no constitutional right because of the officers' conduct and, therefore, he cannot maintain a § 1983 claim against defendants.[9] The existence of a civil right allegedly infringed is an absolute prerequisite to the bringing of a § 1983 case. In the words of the Supreme Court, "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' of the United States." *Martinez v. California,* 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980), *quoting Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979).

If the conduct complained of violates no civil right, it is irrelevant whether it makes out a state tort violation. The Constitution proscribes official behavior that infringes upon a citizen's fundamental freedoms; it does not address every mishap precipitated by an official acting under color of state law. *Baker v. McCollan, supra; Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).

In Count I of Todd's complaint, it is not readily apparent what civil right he is claiming was infringed by the officers' conduct. Paragraph 22 of his complaint alleges that the individual defendants caused him "to be subjected to a deprivation of the rights, privileges and immunities guaranteed to Plaintiff by the Constitution knowingly, intentionally and maliciously," but

does not further specify the right infringed. In paragraph 15, Todd states that "[D]efendant law enforcement officers did allow Plaintiff to enter the school bus carrying a hunting gun and hijack the bus at gunpoint and made no attempt to stop Plaintiff from proceeding ...." Paragraph 16 reads in part that "[Defendants Woods, Bowen, Lingenfelter and Christ] ... did surround the school bus at gunpoint and after placing Plaintiff in a stand-off situation did intentionally shoot him."

When asked to clarify his position at trial, Todd asserted that the right infringed was to have an investigation of his hijacking scheme conducted in good faith, and to have been apprehended in a way calculated to do him less harm. In Todd's brief, a variety of alternatives are suggested to the way in which he was arrested, basically involving earlier intercession. I will construe Todd's civil rights claim as urging, in the alternative, a right to be arrested promptly, a right to be treated non-maliciously, and a right to be protected from crime even if caused by oneself.

■ There is no constitutional right to be arrested at any particular stage of a criminal undertaking. *Hoffa v. United States,* 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966).

> The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction." *Id.* at 310, 87 S.Ct. at 417.

---

**8.** Because Todd voluntarily dismissed Count II of his complaint, I do not deal here with Todd's claim of a constitutional violation that might have been involved in an unnecessary shooting.

**9.** Todd suggests Sergeants Peppiatt and Williams are liable under § 1983 because they failed to prevent the officers under their super-

vision from depriving Todd of his constitutional rights. In paragraph 22 of his complaint, Todd alleges what appears to be a *respondeat superior* theory of liability for Oakland County and White Lake Township. Finding no infringement of a constitutional right, I need not reach these claims.

■ I also find no constitutional right to be told of an investigation, or to be prevented from engaging in criminal activities. *Cf. Coffy v. Multi-County Narcotics Bureau,* 600 F.2d 570 (6th Cir.1979).

■ Todd's argument that he had a right to be protected from the consequences of his criminal acts fares no better. It is only in the rare instance that the police have a duty (which, if breached, might result in a constitutional deprivation) to protect any citizen from criminal acts. Such a duty arises in the "Good Samaritan" situation, where the police have by their own conduct placed a plaintiff in a situation of danger. Without such a causal link between the danger and the police behavior, however, there is no deprivation. Recently, this distinction was explained by the United States Court of Appeals for the Seventh Circuit in *Bowers v. De Vito,* 686 F.2d 616 (7th Cir. 1982), a § 1983 action brought by the executor of a young woman who had been killed by a mentally ill person wrongfully released from custody:

> There is a constitutional right not to be murdered by a state officer, for the state violates the Fourteenth Amendment when its officer, acting under color of state law, deprives a person of life without due process of law . . . but [generally speaking] there is no constitutional right to be protected by the state against being murdered by criminals or madmen. . . . The Constitution is a charter of negative liberties; it tells the state to let the people alone; it does not require the federal government or the state to provide services . . . .

On the other hand:

> If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit. It is on this theory that the state prison person-

nel are sometimes held liable under section 1983 for the violence of one prison inmate against another.[10] . . . But the defendants in this case did not place Miss Bowers in a place or position of danger; they simply failed adequately to protect her, as a member of the public from a dangerous man.

*See also Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980); *Puckett v. Cox,* 456 F.2d 233 (6th Cir.1972); *Heard v. LaFourche,* 480 F.Supp. 231 (E.D. La.1979).

As in the *Bowers* case, nothing that the police did instigated the violent events which led to Todd's injury. Todd himself was the cause of the crisis. He was neither goaded nor entrapped to hijack the bus; at worst, the police did not effectively prevent the hijacking from occurring. Had Todd not embarked on his hijacking scheme, he would not have been injured. Because there was no duty to intervene, as a good Samaritan or otherwise, the defendants' omission cannot form the basis for a civil rights claim.

*Coffy v. Multi-Counties Narcotics Bureau, supra,* disposes of the argument that ill will during an investigation is enough by itself to constitute the deprivation of a civil right. In *Coffy,* the United States Court of Appeals for the Sixth Circuit held that Kenneth Beamer, a federal Narcotics Bureau official who had been directing the investigation of illegal drug sales at an Ohio tavern called Magnacca's, was entitled to a directed verdict. The court explained: "Even assuming Beamer's interest in the activities at Magnacca's was the result of his personal feeling toward [plaintiff], there is nothing in this record that would lead reasonable persons to conclude that the undercover operation was initiated for any purpose other than to investigate possible violations of Ohio's narcotics and dangerous drug statutes." *Id.* at 580; *see also Beaure-*

---

**10.** Another example of this principle is *White v. Rochford,* 592 F.2d 381 (7th Cir.1979), in which the United States Court of Appeals for the Seventh Circuit upheld the § 1983 claim of several children against police officers who had refused to remove them from a dangerous situation created by the officers' own law enforcement activities. The children had been left in a car on the side of a busy highway when their uncle was arrested for drag-racing.

*gard v. Wingard,* 362 F.2d 901 (9th Cir. 1966).

As the Sixth Circuit pointed out in *Coffy,* an investigation marked by ill will but motivated by the need to respond to lawbreaking is distinguishable from an arrest which, although proper on its face, is pretextual. Thus, in *Lessman v. McCormick,* 591 F.2d 605 (10th Cir.1979), the United States Court of Appeals for the Tenth Circuit held actionable the § 1983 suit of a woman who alleged that she had been arrested for a traffic offense by police, at the behest of a mayor acting in concert with a bank officer, in order to intimidate her into paying back a bank loan.

Some or all of the defendants in this case may have hoped some harm would come to Todd during his hijack attempt. Nevertheless, their response to the hijack rumor was certainly not pretextual in the sense that the behavior of the police in *Lessman* was alleged to have been. Even if the defendants wanted to "get" Todd, they did not cast around for an excuse to become officially involved with him or attempt to incite Todd into lawbreaking; rather, the hijack attempt was thrust upon them. Once involved, Todd blames them for not taking a more active role in defusing the situation. As mentioned above, however, since the situation was not of their making, their inaction does not support a constitutional violation. Had the police, after Todd was shot, ignored his injury and not taken him to the hospital promptly, that might well have been a malicious refusal to act sufficient to make out a § 1983 claim. Todd himself agrees, though, that the police acted quickly to get him medical attention.

For these reasons Count I was dismissed. An appropriate order is entered herewith.

### ORDER DISMISSING PLAINTIFF'S COMPLAINT

For the reasons stated in the accompanying opinion, IT IS ORDERED that plaintiff's complaint be, and hereby is, DISMISSED with prejudice.