**Robert MASTROIANNI, Plaintiff,**

v.

**Patrick D. DEERING, Michael J. Bowers, Lee J. Sweat, Jr., Joe B. Jackson, Jr., and Weyland Yeomans, Defendants.**

Civ. A. No. CV293–88.

United States District Court, S.D. Georgia, Brunswick Division.

Nov. 4, 1993.

---

Stephen L. Berry, Saint Marys, GA, for Robert D. Mastroianni.

Grace Evans Lewis, John C. Jones, Atlanta, GA, James A. Bishop, Bishop & Lindberg, Carl Foster Lindberg, James Bishop Law Offices, Brunswick, GA, Charles M. Richards, Atlanta, GA, for defendants.

## ORDER

ALAIMO, District Judge.

On June 29, 1993, Plaintiff, Robert Mastroianni ("Mastroianni"), instituted this federal question action against Defendants, alleging violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983"). Mastroianni claims that Defendants violated his rights under the United States Constitution when they conspired to force Camden County Sheriff William E. Smith ("Sheriff Smith") out of office by coercing Mastroianni and others to give false testimony against Sheriff Smith. This case is presently before the Court on Defendants' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendants' motion will be GRANTED IN PART and DENIED IN PART.

## FACTS

Smith and Mastroianni have served for several years as Sheriff and Deputy Sheriff, respectively, in Camden County, Georgia. During 1991 and 1992, Defendant Michael J. Bowers ("Bowers"), Attorney General of Georgia, supervised an investigation into the activities of Sheriff Smith and Mastroianni. Mastroianni alleges that the purpose of this investigation was to force Sheriff Smith out of office. According to Mastroianni, Bowers conspired with the other defendants, Georgia Bureau of Investigation ("GBI") Agents Lee J. Sweat, Jr. ("Sweat"), Joe B. Jackson, Jr. ("Jackson"), and Weyland Yeomans ("Yeomans"), and Assistant Attorney General Patrick D. Deering ("Deering"), to discredit and stigmatize Mastroianni and Sheriff Smith by accusing them of crimes for which Defendants had no evidence. Mastroianni alleges that Defendants tried to intimidate him into implicating Sheriff Smith in criminal activities by threatening to indict him (Mastroianni) if he did not cooperate. Mastroianni further contends that Defendants intimidated other witnesses into giving false testimony against him (Mastroianni) by threatening them with criminal prosecution.

On April 6, 1992, Deering first discussed the investigation of Mastroianni with the Grand Jury of Camden County. At 7:35 P.M. on July 1, 1992, Deering filed a "Notice of Indictment" with the Clerk of the Superior Court in Camden County. On July 1 or July 2, Jackson allegedly contacted members of the press to tell them that the proposed indictment was available at the Camden County Courthouse. The Camden County Grand Jury considered Mastroianni's case again on July 16 and 17. Mastroianni alleges that during the grand jury proceedings, Deering and Yeomans gave false, misleading, and incomplete testimony against him. The grand jury returned an indictment against Mastroianni on one of the three counts presented to them.

On July 17, Mastroianni was arrested, handcuffed, and transported to Glynn County, Georgia, where he was booked and released after posting a $5000 bond. This bond restricted Mastroianni's freedom of movement from the time it was issued until

April 9, 1993, when Deering and Bowers entered a *nolle prosequi* in favor of Mastroianni.

Several times during the investigation, various defendants talked with the press about the investigation and the indictment. Mastroianni claims that these communications with the press stigmatized his reputation and deprived him of the right to grand jury secrecy. Mastroianni further alleges that Defendants' actions violated a wide array of his constitutional rights, including his rights to be free from malicious prosecution, bad faith prosecution, abuse of process, knowing use of false evidence, knowing use of perjured testimony, knowing use of testimony obtained by intimidation, false arrest, false imprisonment, unlawful detention, and unreasonable seizure. He further claims that his right to fair trial and other due process rights were violated. All these claims are alleged to be parts of the conspiracy by Defendants to violate Mastroianni's constitutional rights.

On August 2, 1993, and September 20, 1993, Defendants filed motions to dismiss Plaintiff's complaint and amended complaint, respectively, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. According to Defendants, the complaint and amended complaint should be dismissed because (1) they fail to make sufficiently specific allegations against some or all of the Defendants; (2) some of the Defendants' alleged actions are protected by absolute immunity; and (3) none of the Plaintiff's numerous theories states a claim for relief under 42 U.S.C. § 1983.

## DISCUSSION

### I. *Failure To State A Claim For Relief*

█ Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a complaint on the ground that the plaintiff has failed to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) attacks the legal sufficiency of the complaint. In determining the merits of a 12(b)(6) motion, a court must assume that all of the factual allegations of the complaint are true, *e.g.*, *United States v. Gaubert*, 499 U.S. 315, ——, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990), and construe them in the light most favorable to the plaintiff. *E.g.*, *Sofarelli v. Pinellas County*, 931 F.2d 718, 721 (11th Cir.1991). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citation omitted); *see Bank v. Pitt*, 928 F.2d 1108, 1111–12 (11th Cir.1991) (per curiam).

### II. *Section 1983 Liability, Individual Officers*

█ Section 1983 provides a private cause of action for persons whose rights under the federal constitution or laws have been violated under color of state law. "[T]he § 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law." *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980).[1] In the present action, Mastroianni alleges a § 1983 claim based on a variety of Constitutional violations.

### III. *Vagueness: Pleading Requirements And Conspiracy*

█ Defendants argue that Mastroianni's amended complaint is too vague to withstand a motion to dismiss, either as a whole or with respect to particular Defendants. To be sure, Plaintiff's complaint and amended complaint are organized in a rambling, random fashion. Fortunately for Mastroianni, the pleading requirements under the Federal Rules of Civil Procedure and even under the "heightened pleading" standard discussed in the parties' briefs do not require a great deal of specificity, clarity or organization.

---

1. Section 1983, in pertinent part, provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress. 42 U.S.C. § 1983.

The vagueness problem is especially significant to the decision whether Mastroianni's conspiracy claim is sufficient to withstand a 12(b)(6) motion. "To establish a prima facie case of conspiracy to violate rights protected by § 1983, a plaintiff must demonstrate that the defendants 'reached an understanding to violate [his] rights,'" *Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir.1988) (cites omitted) (alteration in original). Mastroianni's allegations as to conspiracy and substantive claims probably [2] must meet the "heightened pleading standard" the Eleventh Circuit has set out in some § 1983 cases:

> In civil rights and conspiracy actions, courts have recognized that more than mere conclusory · notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. [citations omitted]. In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed. [citations omitted]. A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of the conspiracy. [citations omitted].

*Fullman v. Graddick*, 739 F.2d 553, 556–557 (11th Cir.1984). Mastroianni has satisfied this standard, if just barely. Mastroianni's amended complaint tells Defendants the "nature" of their alleged conspiracy. According to Mastroianni, Defendants conspired to discredit him and Sheriff Smith in order to speed Sheriff Smith's removal from office. Defendants purportedly sought to accomplish that aim by intimidating witnesses into falsely incriminating Smith, and by threatening with arrest or actually arresting those who did not cooperate in the scheme. These allegations are more specific than a mere assertion that a conspiracy existed.

Mastroianni describes very few specific acts performed by specific defendants. However, he has alleged that all Defendants made an effort to intimidate potential witnesses, including himself, into falsely implicating Sheriff Smith in crime. As such, the complaint implicates all Defendants in the alleged conspiracy to intimidate Mastroianni and ultimately deprive him of constitutional rights by arresting him without probable cause. These allegations are specific enough to prevent dismissal of the amended complaint.

## IV.  *Absolute Immunity*

■  A few of Defendants' alleged actions are protected by absolute immunity, and may not provide the basis for § 1983 liability. "There is widespread agreement among the Courts of Appeals that prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries." *Burns v. Reed*, 500 U.S. 478, —— n. 6, 111 S.Ct. 1934, 1941 n. 6, 114 L.Ed.2d 547, 561 n. 6 (1991) (cites omitted) (holding that a prosecutor had absolute immunity for his appearance in court and presentation of evidence in support of an application for a search warrant). Defendant Deering's discussion of this case with the grand jury on April 6, 1992, alleged in paragraph 24 of Mastroianni's amended complaint, is an act protected by absolute immunity.

■■  Witnesses in criminal trials (whether government officials or not) are absolutely immune from liability based on their testimony. *Briscoe v. LaHue*, 460 U.S. 325, 326, 103 S.Ct. 1108, 1110, 75 L.Ed.2d 96 (1983). Similarly, grand jury witnesses are entitled to absolute immunity for their testimony. *Strength v. Hubert*, 854 F.2d 421, 424 (11th

---

2. Because both parties assume that such a heightened pleading standard is applicable, the Court will make the same assumption. In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court rejected the use of a heightened pleading standard in § 1983 cases involving municipal liability, but stated that it had no occasion to consider whether a heightened pleading standard should be used in § 1983 cases involving individual officers. In its analysis, however, the Court · noted that the Federal Rules of Civil Procedure impose a particularity requirement for only two circumstances—fraud and mistake—and reasoned that if it is desirable to require particularity in additional circumstances, such changes should be made by amending the Federal Rules, and not by judicial interpretation. —— U.S. at ——, 113 S.Ct. at 1163, 122 L.Ed.2d at 524.

Cir.1988). Defendants, Deering[3] and Yeomans, are entitled to absolute immunity for their testimony before the grand jury on July 16 and 17, 1992, alleged in paragraph 30 of Mastroianni's amended complaint.

▮ State prosecutors have absolute immunity for the initiation of criminal prosecutions. *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). Deering's filing of a notice of indictment, mentioned in paragraph 25 of Mastroianni's complaint, is a usual step in the initiation of a criminal prosecution, and is an act protected by absolute immunity. None of Defendants' other acts as alleged in Mastroianni's amended complaint is entitled to greater than qualified immunity. Qualified immunity has not been fully addressed by the parties and need not be discussed here.

## V. Causes Of Action Alleged Under Section 1983

Mastroianni has alleged multiple theories of action under § 1983. These theories are all interrelated with the underlying conspiracy Mastroianni has alleged, but the merits of each theory will be considered individually. Even if Mastroianni can support all the theories which survive the motion to dismiss, he will not be entitled to as many recoveries as he has theories. The injury underlying many of these theories is the same.

▮ Mastroianni's claims are designated as tort theories; *i.e.*, "malicious prosecution" and "false imprisonment." Some commentators and courts contend that an independent constitutional violation[4] must be shown, notwithstanding the elements of a common law tort, in order to state a claim under § 1983. *See* Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation, The Law of Section 1983* § 3.15, at 210 (3rd ed. 1991), *and Conway v. Mt. Kisco*, 758 F.2d 46, 48 (2d Cir.1985), *cert. granted in part sub nom. Cerbone v. Conway*, 474 U.S. 1100, 106 S.Ct.

878, 88 L.Ed.2d 915, *and cert. dismissed,* 479 U.S. 84, 107 S.Ct. 390, 93 L.Ed.2d 325 (1986). Some Eleventh Circuit cases involving § 1983 tort claims seem not to require a showing of a specific constitutional deprivation. *See NAACP v. Hunt*, 891 F.2d 1555, 1563 (11th Cir.1990) (discussing malicious prosecution). However, § 1983 clearly requires a showing of something more than common law tort elements, so the Court will analyze Mastroianni's tort claims in the context of the Fourth and Fourteenth Amendments.

### A. Malicious Prosecution/Bad Faith Prosecution

▮ The Eleventh Circuit Court has held that there is a federal right to be free from malicious prosecution, and that right is protected under § 1983. *NAACP v. Hunt, supra,* at 1563. The usual elements of malicious prosecution include:

1) A criminal proceeding instituted or continued by the defendant against the plaintiff.

2) Termination of the proceeding in favor of the accused.

3) Absence of probable cause for the proceeding.

4) "Malice," or a primary purpose other than that of bringing an offender to justice.

William L. Prosser, *Handbook of the Law of Torts* § 119, at 835 (4th ed. 1971).

▮ Assuming the truth of the allegations in the complaint, as we must for the purpose of a motion to dismiss, these four elements are adequately pleaded. The indictment constituted initiation of a criminal proceeding. The entry of *nolle prosequi* constituted termination of the proceeding in the Plaintiff's favor. *See, e.g., Hess v. Missouri P.R. Co.,* 657 F.Supp. 1066, 1068 (S.D.Ill. 1987). Assuming Plaintiff was prosecuted for the reason he claims—because of his

---

**3.** Paragraph 30 of Mastroianni's amended complaint seems to say that Deering gave testimony in the grand jury proceeding. It is not clear whether he acted as a prosecutor or as a witness. However, this ambiguity does not matter because he would be entitled to absolute immunity in either situation.

**4.** Federal statutory violations also give rise to claims under § 1983, but no violation of a federal statute is alleged here.

refusal to help Defendants frame Smith—there was no probable cause, and Defendants prosecuted Plaintiff for a reason unrelated to justice. As Plaintiff's complaint makes sufficient allegations to state a malicious prosecution claim, dismissal of this claim under 12(b)(6) of the Federal Rules of Civil Procedure would be inappropriate.

If the showing of a specific constitutional deprivation (outside the Eleventh Circuit's "federal right" to be free from malicious prosecution) is necessary, Mastroianni's contention that he was arrested and detained for a reason other than probable cause is sufficient to support an inference of a Fourth Amendment deprivation. *See Strength v. Hubert*, 854 F.2d 421, 425 (11th Cir.1988) (discussing the Fourth Amendment requirement of probable cause in the context of a malicious or "bad faith" prosecution claim under § 1983).

### B. Abuse Of Process

■ The Eleventh Circuit has not addressed the propriety of making abuse of process into a § 1983 claim. However, the Third Circuit has stated that "[a]n abuse of process is by definition a denial of procedural due process." *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir.1977). The elements of the tort of abuse of process include:

> first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

Prosser, *supra*, at 857.

The allegations in Mastroianni's complaint appear to state a claim under this standard. Mastroianni contends that the ulterior purpose behind his arrest and indictment was Defendants' desire to coerce him to testify falsely against Sheriff Smith. Mastroianni satisfies the second element by alleging that he was threatened with prosecution in the event that he refused to testify. As Mastroi-

anni has sufficiently pleaded the elements of abuse of process, which some courts have held to constitute a constitutional deprivation, this claim will not be disposed of on a motion to dismiss.

### C. Knowing Use Of False Evidence, Evidence Improperly Obtained, and Perjured Testimony

■ Neither Mastroianni nor the Court has found authority indicating that there is a separate claim for knowing use of false evidence, evidence improperly obtained, or perjured testimony, except where such evidence has led to a criminal conviction. The Supreme Court cases which Mastroianni cites in his discussion of this issue, *e.g., Miller v. Pate*, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967), stand for the proposition that "the Fourteenth Amendment cannot tolerate a state criminal *conviction* obtained by the knowing use of false evidence." *Miller,* 386 U.S. at 7, 87 S.Ct. at 788 (emphasis added). There was no conviction here and those cases are not applicable.

The lower court decisions Mastroianni cites, *e.g., Slavin v. Curry,* 574 F.2d 1256, 1260 (5th Cir.1978), *overruled on other grounds by Sparks v. Duval County Ranch Co.,* 604 F.2d 976, 978 (5th Cir.1979), and *Jennings v. Shuman,* 567 F.2d 1213 (3rd Cir.1977), address prosecutions resulting in convictions, or claims for false arrest or malicious prosecution. None of these cases indicates that there is a claim for use of "false evidence" in pre-conviction proceedings separate from possible claims for malicious prosecution, abuse of process, or false arrest.

### D. False Arrest/Unreasonable Seizure

■ "The Fourth and Fourteenth Amendments guard against arrest without probable cause," *Hand v. Gary,* 838 F.2d 1420, 1427 (5th Cir.1988) (citations omitted). "[A]n officer who maliciously seeks to obtain a facially valid warrant should not be absolved of liability simply because he succeeded." *Id.* (cites omitted). "[A]n officer who acted with malice in procuring the warrant or the indictment will not be liable if *the facts* supporting the warrant or indictment are put

before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's "independent" decision "breaks the causal chain" and insulates the initiating party." *Id.* (citations omitted) (emphasis in original). However, the causal chain is not broken if there is any misdirection of the magistrate or grand jury by omission or commission. *Id.* at 1428.

Mastroianni alleges that Defendants maliciously sought to procure the indictment (which led to his arrest) for the improper purpose of coercing him to testify falsely against Sheriff Smith. He further alleges that Defendants, Deering and Yeomans, misled the grand jury with false evidence and, thus, the grand jury's actions do not insulate Defendants from liability. Accordingly, Mastroianni has sufficiently alleged that probable cause was lacking, and his false arrest claim cannot be properly disposed of on a motion to dismiss.

### E. False Imprisonment/Unlawful Detention

■ In *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the Supreme Court considered whether false imprisonment states a claim under § 1983, and disapproved the tort-based analysis used by the Fifth Circuit. The Court held that the focus of analysis in such cases should be whether the detained person was deprived of liberty without due process of law (in violation of the Fourteenth Amendment), and not whether the elements of a common law/state law tort are met. 443 U.S. at 142, 99 S.Ct. at 2693.

"[T]he state of mind of the defendant may be relevant on the issue of whether a constitutional violation has occurred ..." *Id.* at 140 n. 1, 99 S.Ct. at 2692 n. 1. In *Baker*, the Supreme Court decided that a three day detention resulting from a mistake of identity did not rise to the level of a constitutional deprivation of liberty. However, the plaintiff in *Baker* alleged that it was *negligent* conduct by the defendant which led to his imprisonment. Mastroianni alleges that a bad faith reason or improper purpose motivated Defendants' conduct which led to Mastroianni's detention. "[A]n arrest which might be lawful on its face can be an abuse of power, condemned by the Civil Rights Act, if done for an improper purpose." *Lessman v. McCormick*, 591 F.2d 605, 611 (10th Cir. 1979).

In *Lessman*, the supposed reason for Plaintiff's arrest was her failure to pay an overtime parking ticket. However, the police continued to detain her after she had paid the ticket. They required her to wait for the arrival of a bank employee who had allegedly conspired with the police to cause her arrest so that his bank could intimidate her into paying money owed them before she paid her other creditors. 591 F.2d at 607. The *Lessman* Court held that, even though this act bordered on being an insubstantial deprivation of liberty, it was substantial enough to survive a motion to dismiss. *Id.* at 611.

Similarly, Mastroianni's brief detention and the restrictions imposed by his bond border on the insubstantial, by constitutional deprivation of liberty standards. However, Mastroianni's allegation that he was arrested and detained for the improper purpose of forcing him to give false evidence against Sheriff Smith raises a sufficient inference of a due process violation to save his "false imprisonment" claim from a motion to dismiss.

### F. Deprivation Of Right To A Fair Trial

■ The "fair trial" bullet from Mastroianni's shotgun misses the target because there was no trial. The relevant injury in deprivation of fair trial claims is the existence of a potentially unfair trial or verdict, not the mere absence of a fair trial. Mastroianni cannot have been deprived of a fair trial in the absence of a trial. He also has no right, constitutional or otherwise, to be "free from intentional and prejudicial pre-trial publicity," where there was no trial to be prejudiced and, thus, no injury. Likewise, even if a right to grand jury secrecy is included in the right to fair trial, no right to grand jury secrecy arose here because there was no trial.

### G. Stigma To Reputation

 "[R]eputation ... is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). "[A] federally recognized liberty interest is implicated only when an individual's reputation is stigmatized in connection with the denial of some specific constitutional guarantee or some 'more tangible' interest." *Marrero v. City of Hialeah,* 625 F.2d 499, 512 (5th Cir.1980), *cert. denied sub nom. Rashkind v. Marrero,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). "[T]o the extent the unconstitutional conduct caused injury to appellants' personal or business reputations, the injury is compensable as an element of damages flowing from the unlawful conduct." *Id.* at 514.

Hence, damage to reputation is not a claim which stands alone. It is merely an element of damages which may be proven *if* a plaintiff can prove that such damage arose in connection with other unconstitutional conduct. It would be premature to consider here what types of damages might be appropriate in this case and, thus, this issue will be deferred for later consideration.

### CONCLUSION

Mastroianni's claims for deprivation of fair trial and for use of false evidence, evidence improperly obtained, and perjured testimony, are hereby dismissed. Surviving are his conspiracy claim and his constitutional claims in the nature of malicious prosecution, abuse of process, false arrest, and false imprisonment. In addition, Mastroianni may be entitled to prove and recover for damage to his reputation *if* he can prove that an unconstitutional act gave rise to such damages. No Defendant will be dismissed from the case at this time. As such, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART.**

**SO ORDERED.**